UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEITH J. MITAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-01260-SEB-TAB |
| | ) | |
| GEORGE P. CLARK, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the Motion for Summary Judgment [Dkt. 62]

filed by Defendant on February 26, 2021, and Cross Motion for Summary Judgment

[Dkt. 67], filed by Plaintiff on April 15, 2021.  Plaintiff Keith J. Mitan has brought this

action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,

403 U.S. 388 (1971), against Defendant George P. Clark, a Postal Inspector for the

United States Postal Inspection Service, alleging that Inspector Clark conducted an

unlawful seizure of Mr. Mitan's personal property in violation of the Fourth Amendment.

For the reasons detailed below, we <u>GRANT</u> Defendant's Motion for Summary Judgment

and <u>DENY</u> Plaintiff's Cross Motion for Summary Judgment.

**Factual Background**

Plaintiff Keith J. Mitan ("Mr. Mitan"), a resident of Michigan, was a practicing

attorney there until 2009, when his bar license was suspended.  Pl. Dep. at 25–26.  The

instant lawsuit arises from the seizure of certain documents belonging to Mr. Mitan from

1

a residence located at 3230 North Reba Court, Bloomington, Indiana, ("the Property") in connection with a criminal investigation involving Mr. Mitan's brother, Kenneth Mitan ("Kenneth"). Defendant George P. Clark was the United States Postal Inspection Service Agent assigned to that criminal investigation.

## I.   Plaintiff's Use of the Property

In March 2001, Mitan Estates, Inc. purchased the Property from the Richard E. Deckard Family Limited Partnership #206 (the "Deckard Partnership"). According to Mr. Mitan, Kenneth "signed the original purchase agreement … on behalf of Mitan Estates, Inc. [MEI]," but it is not clear what position, if any, Kenneth held with MEI at the time of the purchase. Mr. Mitan has never been an officer or director of MEI and is unaware of the purposes behind the corporation's purchase of the Property, but "speculate[s]" that it was purchased "[a]s an investment." Pl. Dep. at 8–9, 11.

According to Mr. Mitan, he had permission to "keep his personal property inside the house" located on the Property, and at various times between 2001 and 2009, he brought "documents [he] wasn't using anymore" to store in the house, some of which were projected by the attorney-client privilege. *Id.* at 14, 29–31. Mr. Mitan never resided in the house on the Property or ever even spent the night there as "[t]here was no bed in the house." *Id.* 15, 16. Rather, at all times relevant to this lawsuit, Mr. Mitan resided in Farmington Hills, Michigan, and used the Property only to store items "[b]ecause [he] didn't have space in Michigan" to put them. *Id.* at 7, 14. Mr. Mitan's brother, Kenneth, lived "primarily in California" during the relevant time period and Mr.

Mitan is unaware whether Kenneth ever used the house on the Property as his residence. *Id.* at 11–13, 16–17.

## II.    Subpoena Issued for Documents Related to the Property and to Individuals Including Plaintiff

In 2008, the United States Attorney's Office for the Eastern District of Pennsylvania opened a criminal investigation involving Plaintiff's brother, Kenneth Mitan.  In connection with that investigation, on October 8, 2008, Assistant United States Attorney ("AUSA") Scott Cullen issued a grand jury subpoena to "Deckard Homes and Apartments," demanding production of "[a]ll records related to the property at 3230 North Reba Court, Bloomington, IN 47403, and to individuals named Kenneth Mitan, Keith Mitan, Teresa Mitan, and Frank Mitan, including but not limited to, lease agreements, purchase agreements, correspondence, methods of payment, and, notices of default and/or eviction, dating from January 1, 2005 to the present."[1]  Dkt. 62-4; Clark Decl. ¶ 6.  That subpoena also provided, in lieu of appearance before the grand jury, the requested documents could be turned over to the government by mailing them to the United States Postal Inspection Service as "615 CHESTNUT STREET, SUITE 700, PHILADELPHIA, PA 19106, ATTN: George Clark, United States Postal Inspector." Dkt. 62-4.  The subpoena further provided that it would "remain in effect until [the Deckard Partnership] w[as] granted leave to depart by the court or by an officer acting on behalf of the court."  *Id.*

---

[1] Frank and Teresa Mitan are the parents of Kenneth and Keith Mitan.

3

The Deckard Partnership complied with the subpoena, providing the requested materials in 2008.  In December 2008, a federal grand jury in the U.S. District Court for the Eastern District of Pennsylvania returned an indictment charging Kenneth Mitan, Frank Mitan, and other defendants with various counts of mail and wire fraud and related offenses.  Dkt. 62-5.

### III.   Foreclosure on the Property and State Court Order Awarding Legal Title to the Real Estate and Personal Property Therein

In January 2009, the Deckard Partnership commenced a foreclosure action on the Property.  Dkt. 62-6.  On September 10, 2009, after a contested hearing at which both sides were represented by counsel, the Monroe Circuit Court entered a judgment in favor of the Deckard Partnership, awarding to the Deckard Partnership "legal and equitable title to the real estate [at 3230 Reba Court] and personal property therein."  *Id.* at 1–2.

By letter dated September 30, 2009, AUSA Cullen notified the U.S. District Court in the Eastern District of Pennsylvania that the week prior, on September 24, 2009, a representative of the Deckard Partnership had contacted the government to inform it of the foreclosure action and the Monroe Circuit Court's September 10, 2009 Order awarding the Deckard Partnership possession of the real property and all personal property therein.  When agents of the Deckard Partnership entered the home, they discovered the house "littered with thousands and thousands of disorganized documents."  Dkt. 62-7.  AUSA Cullen stated in the September 30 letter that the government anticipated that it would "have the documents on October 2, 2009 and [would] make them available for the defendants shortly thereafter."  *Id.*

Kenneth Mitan's criminal trial was scheduled to begin only a few days later, in early October 2009.  The U.S. Attorney's Office believed it had an "obligation" to obtain the records stored at the Property and instructed Inspector Clark to travel to Indiana to collect them.  Inspector Clark understood that, in doing so, he was "acting at the direction of the United States Attorney's Office."  Clark Dep. at 15–16, 19.  Before traveling to the Property, Inspector Clark consulted with the U.S. Attorney's Office regarding whether a search warrant was required to remove materials from 3230 Reba Court and was advised that no search warrant was necessary.  It was Inspector Clark's understanding that, as of that time, the Deckard Partnership was the owner of both the real and personal property contained in the residence on the Property and that the Deckard Partnership wanted the government to retrieve the materials inside the house.  *Id.* at 10, 12, 14, 15–16; Clark Decl. ¶ 10.

## IV.    Seizure of Documents from the Property

Early on the morning of October 1, 2008, Inspector Clark and an FBI agent flew from Philadelphia to Indianapolis, where they rented a U-Haul and drove to Bloomington, Indiana.  When they arrived at the Property, Inspector Clark observed employees of the Deckard Partnership clearing out the residence.  Clark Dep. at 4–5; Clark Decl. ¶¶ 11–12.  Inspector Clark informed Deckard Partnership employee, Ranatta Raper, of their arrival, and Ms. Raper instructed other Deckard Partnership employees to load the "boxes and bags of stuff" into the U-Haul.  Clark Dep. at 5; Clark Decl. ¶¶ 13–14.  According to Inspector Clark, he "couldn't open the door of the truck fast enough for [the Deckard Partnership employees] to get the stuff out of the house."  Clark Dep. at 11.

5

Inspector Clark testified that the Deckard Partnership employees "were expecting us. They loaded the truck up with records … almost faster than I could blink. They wanted to get rid of that stuff." *Id.* at 37.

As the materials were loaded into the U-Haul, Inspector Clark compiled a rough inventory of the documents they had collected using a sheet of carbon paper on Postal Service Form 8164 ("PS Form 8164"), titled "Search Warrant Inventory." *See* Dkt. 62-9. Inspector Clark crossed out the words "search warrant" on the form to clarify that he was not executing a search warrant. *Id.*; Clark Dep. at 38. According to Inspector Clark, he "did nothing to suggest [he] had a search warrant,"[2] utilizing the PS Form 8164 for the inventory only because it was printed on carbon paper and he wanted to leave a copy with Ms. Raper as a receipt but did not have access to a copy machine. Clark Dep. at 37–38. The inventory identified the "[i]tems taken from the Deckard Homes" as follows: 98 cardboard boxes of documents; five plastic crates of documents; six plastic garbage bags of documents; one wire basket of documents; and various other items such as computers, luggage, and videotapes. Dkt. 62-9. Ms. Raper's initials appear at the bottom of the inventory sheet. *Id.*

---

[2] Mr. Mitan contends that whether Inspector Clark led Deckard Partnership employees to believe that he had a search warrant for the materials seized from the Property is a disputed fact. However, he fails to cite to any admissible evidence in support of that contention, citing instead merely to an attorney argument written in a prior brief filed in this case in which the attorney assumed, for purposes of the argument, that Inspector Clark had shown Ms. Raper a search warrant. The only evidence adduced in the record before us regarding a search warrant is Inspector Clark's sworn testimony that he did not have one and never represented to anyone that he did. There is no contrary testimony from Ms. Raper or any other Deckard Partnership employee.

Inspector Clark and the FBI agent were at the Property for approximately one hour on October 1, 2009 before beginning the drive in the U-Haul with the seized materials back to Philadelphia, where they arrived at approximately 3:00 or 4:00 a.m. on the morning of October 2, 2009.  Clark Dep. at 4–5, 6; Clark Decl. ¶ 15.  In Philadelphia, the collected materials were transferred to and stored in a government facility for potential use in the criminal proceedings against Kenneth Mitan.  Clark Dep. at 16; Clark Decl. ¶ 15.

Mr. Mitan was not physically present at the Property on October 1, 2009, and thus did not personally witness the removal of the materials from 3230 Reba Court.  Pl. Dep. at 7.  The items on the inventory sheet that Mr. Mitan claims constitute his personal property include several boxes and plastic containers of documents, his briefcase, and an "old hard drive" that had been removed from a computer.  *Id.* at 20.

## V.     Reversal of State Court Order and Return of Plaintiff's Personal Property

In December 2009, approximately two months after Inspector Clark's visit to the Property, Kenneth Mitan filed a notice of appeal with the Indiana Court of Appeals, challenging the Monroe Circuit Court's order awarding title of the property at 3230 Reba Court to the Deckard Partnership.  Dkt. 62-10.  A year later, on November 4, 2010, the Indiana Court of Appeals affirmed the Monroe Circuit Court's order in part but reversed as to the "award of all personal property" in the house and "remand[ed] with instructions to award to the Partnership only that personal property specified by the contract as being

included in the sale." *Mitan v. Richard E. Deckard Family Ltd. P'ship #206*, 936 N.E.2d 873 (Ind. Ct. App. 2010) (unpublished).

Kenneth Mitan was eventually convicted at the criminal trial, and, sadly, died in 2015 while incarcerated.  In March 2015, the Third Circuit Court of Appeals ordered the government to return Plaintiff's personal property that had been seized from 3230 Reba Court, which the government returned to Plaintiff in May 2015, following Kenneth's death.

### VI.    The Instant Litigation

On September 16, 2011, Mr. Mitan filed this lawsuit in our court against the United States Postal Inspection Service and Inspector Clark, individually, and in his official capacity as United States Postal Inspector, alleging that the search of the Property and seizure of his personal property violated his Fourth Amendment rights.  On November 9, 2012, we transferred the case to the United States District Court for the Eastern District of Pennsylvania regarding it as related to the criminal case against Mr. Mitan's brother, *United States v. Kenneth Mitan*, No. 2:08-cr-0760-MMB-1 (E.D. Pa.). *See* Dkt. 46.  The Eastern District of Pennsylvania initially dismissed the lawsuit and denied Mr. Mitan's request for leave to amend his complaint.  Mr. Mitan appealed that order to the Third Circuit Court of Appeals, which held that the dismissal was proper but that the district court had erred in denying Mr. Mitan leave to amend his complaint, remanding the case to the district court for further proceedings.  *See Mitan v. United States Postal Inspection Servs.*, 656 Fed. App'x 610 (3d Cir. 2016).

On remand, Mr. Mitan filed his second amended complaint, this time naming only Inspector Clark in his individual capacity as a defendant.  Specifically, Mr. Mitan alleges that Inspector Clark violated his Fourth Amendment right to be free from unreasonable searches and seizures by "seizing [Mr. Mitan's personal property] without a warrant." Sec. Am. Compl. ¶ 10.  Inspector Clark moved for summary judgment in the Eastern District of Pennsylvania, but the district court concluded that summary judgment was premature and denied the motion without prejudice to refiling once discovery was complete.  Shortly thereafter, Mr. Mitan filed a motion to transfer the case back to this Court, arguing that the personal property at issue in this lawsuit had been returned to him in Michigan and the litigation therefore no longer had a connection to the Eastern District of Pennsylvania.  On March 20, 2020, the Eastern District of Pennsylvania transferred this case back to this district.

Following a period of discovery upon transfer, Inspector Clark moved for summary judgment on February 26, 2021.  Mr. Mitan filed his cross-motion for summary judgment on April 15, 2021.  Those motions are now fully briefed and ripe for ruling.

## Legal Analysis

### I.     Summary Judgment Standard

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence.  *Anderson v. Liberty*

9

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant.  *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Courts often confront cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief.  "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md. 1998).  Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective non-movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

## II.    Discussion

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.  The Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'"  *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 63 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."  *Soldal*, 506 U.S. at 63 (quoting *Jacobsen*, 466 U.S. at

113).  "A 'seizure of property occurs where there is some meaningful interference with an individual's possessory interests in that property."  *Soldal*, 506 U.S. at 63 (quoting *Jacobsen*, 466 U.S. at 113).  An individual is permitted to bring a Fourth Amendment claim based on a search or seizure only of his own "person[], house[], papers, and effects."  U.S. CONST. amend. IV.

Here, Mr. Mitan asserts that his right to be protected from unreasonable seizures was infringed when Inspector Clark seized his personal property from 3230 Reba Court without a warrant.  Inspector Clark rejoins that he is entitled to summary judgment on Mr. Mitan's claims because Mr. Mitan did not actually suffer a violation of his Fourth Amendment rights, given that, at the time of the seizure of the materials at issue in this litigation, the Deckard Partnership had a state court judgment making the Partnership, not Mr. Mitan, the owner of the personal property, and, in any event, Mr. Mitan had no reasonable expectation of privacy in the location from which the materials were seized.[3]

---

[3] Inspector Clark argues that Mr. Mitan's Fourth Amendment claim fails because he had no reasonable expectation of privacy in 3230 Reba Court.  *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable, *i.e.*, one that has a 'source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.") (quoting *Rakas v. Illinois*, 439 U.S. 128, 143–144 & n.12 (1978)).  Given that Mr. Mitan lived in a different state, approximately 350 miles from the Property, and neither owned, resided, nor had ever stayed as an overnight guest at the Property, and was not present on the day of the search, we agree with Defendant that Mr. Mitan had no reasonable expectation of privacy in the Property.  *See, e.g.*, *McFadden v. Pryor*, No. 12 C 4110, 2015 WL 3932100, at *3 (N.D. Ill. June 25, 2015) (holding that the plaintiff lacked Fourth Amendment protections in mother's home where he did not own the property, was not in possession of it, did not reside there, and was not physically present at the time of the search).  However, while Mr. Mitan's lack of a reasonable expectation of privacy in the 3230 Reba Court precludes him from challenging the *search* of the Property, his complaint alleges only a violation of his Fourth Amendment right to be free from unreasonable *seizure* of his personal property.  The fact that he

Inspector Clark also contends that, even if the Court were to find that Mr. Mitan had a possessory interest in the seized materials and the seizure violated the Fourth Amendment, he is nonetheless entitled to summary judgment on qualified immunity grounds because a reasonable government official in his position could have believed that the Deckard Partnership was the owner of the seized property and had voluntarily consented to the seizure; thus, his conduct did not violate clearly established law.

After a full and careful consideration of the parties' arguments, we find, for the reasons detailed below, that even assuming genuine issues of material fact exist as to whether Mr. Mitan held a possessory interest in the materials that Inspector Clark seized from 3230 Reba Court and whether the Deckard Partnership had authority to consent to the seizure,[4] Inspector Clark is entitled to qualified immunity because, when assessed in light of the particular facts of this case, a reasonable officer in his position could have

_____

did not have a reasonable expectation of privacy in 3230 Reba Court it is not determinative of his Fourth Amendment claim based on the alleged unreasonable *seizure* because the Fourth Amendment protects against unreasonable seizures of property even where there are no privacy or liberty interests at stake. *See Soldal*, 506 U.S. at 65 ("We thus are unconvinced that any of the Court's prior cases supports the view that the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated.").  It is well-established that "seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Id.* at 68.

[4] As the Third Circuit recognized in affirming the dismissal of Mr. Mitan's initial complaint, "[a] state court judgment awarding ownership of Mitan's personal property to the Partnership would ordinarily preclude a finding that Mitan retained a possessory interest, but it is not clear in this case that the judgment was meant to, or even could, bind Mitan or his personal property housed at the [Property]," given that the state court judgment names only Mr. Mitan's brother, Kenneth, as a defendant and Inspector Clark has not advanced any argument as to why the judgment would have bound Mr. Mitan or his property.  *Mitan v. United States Postal Inspection Serv.*, 656 Fed. App'x 610, 615–616 (3d Cir. 2016).  However, even if Mr. Mitan retained a possessory interest in the materials seized from the Property at the time of the seizure, for the reasons detailed below, it does not affect our conclusion that Inspector Clark is entitled to qualified immunity.

believed the seizure was constitutional.  Accordingly, we turn directly to the qualified immunity analysis.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal quotation and citation omitted).  When evaluating whether qualified immunity applies, courts must "consider two questions: (1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Allin v. City of Springfield*, 845 F.3d 858, 862 (7th Cir. 2017) (internal citation and quotation omitted).  Thus, qualified immunity is appropriate "when the law, as applied to the facts, would have left objectively reasonable officials in a state of uncertainty." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).  In other words, a government official is entitled to qualified immunity unless it can be said that "every reasonable official would have understood that what he [was] doing violate[d] [a] right." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam).  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks and citation omitted).  Because we are able in this case to "rather quickly and easily decide that there was no violation of clearly established law," we turn immediately to the second prong of the qualified immunity analysis.  *Pearson v. Callahan*, 555 U.S. 223, 239 (2009).

As of October 1, 2008, the date on which Inspector Clark seized the materials at issue, it was clearly established that, while "the Fourth Amendment generally prohibits searches and seizures performed without a warrant, there is an exception when someone with actual or apparent authority consents to the search or seizure." *United States v. Aghedo*, 159 F.3d 308, 310 (7th Cir. 1998). The presence of consent "must be judged against an objective standard," meaning whether "the facts available to the officer at the moment [would] warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (quotation marks an citation omitted). Consent must be voluntary, *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973), and can be manifested through actions as well as words. *United States v. Walls*, 225 F.3d 858, 863 (7th Cir. 2000) (stating that by opening a door and stepping back to allow police entry, a defendant can consent to the police entry into his home). In a § 1983 case such as this, once the defendant presents evidence that the plaintiff consented to the search or seizure, the burden shifts to the plaintiff to establish the lack of consent. *Valance v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997).

Here, at the time Inspector Clark seized the materials at issue in this litigation from 3230 Reba Court, he was acting "at the direction of the United States Attorney's Office," with the understanding based on the Monroe Circuit Court judgment that the Deckard Partnership, not Mr. Mitan, legally owned all personal property housed at that location. Mr. Mitan argues that the state court judgment was invalid, but even if that is true, as the Third Circuit previously recognized in this case, the judgment's "existence

made it objectively reasonable for Clark to believe that the Partnership had authority to consent to the entry and seizure." *Mitan*, 656 Fed. App'x at 614. This conclusion is buttressed by the fact that, before traveling to Indiana to retrieve the materials from the Property, Inspector Clark consulted with the United States Attorney's Office in Pennsylvania regarding whether the government needed to obtain a warrant before taking possession of the materials and was advised that no warrant was required because the Deckard Partnership was consenting to the seizure. The Seventh Circuit has observed that consulting with prosecutors regarding the legal requirements for taking possession "goes a long way toward solidifying [a] qualified immunity defense." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 881 (7th Cir. 2012) (addressing a false arrest claim); *accord Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012) (officer's consultation with deputy district attorney "provides further support for the conclusion that an officer could reasonably have believed that the scope for the warrant was supported by probable cause"); *Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015) (officer's qualified immunity defense was "[f]urther bolster[ed]" by the fact that she consulted with district attorney before conducting arrest).

There is also ample other evidence in the record establishing that a reasonable government official in Inspector Clark's position could have believed that the Deckard Partnership voluntarily consented to the seizure. Inspector Clark testified that, prior to his arrival at the Property, employees of the Deckard Partnership had emailed the U.S. Attorney's Office and "offered" the seized items to the government, indicating that the

materials would be destroyed if not retrieved by the government.  Clark Dep. at 10.

Then, upon Inspector Clark's arrival at the Property, Ms. Raper, an employee of the

Deckard Partnership who was present at that location, gave "tons of oral consent" to the

seizure and initialed an inventory sheet titled "Items taken from Deckard Homes" which

Inspector Clark understood was to "memorializ[e]" that the Partnership was "giving [the

government] this property."  *Id.* at 11.  The Partnership's consent was also manifested

through the employees' actions of loading bags and boxes of documents into Inspector

Clark's U-Haul truck "almost faster than [he] could blink."  *Id.* at 37.  According to

Inspector Clark, he "couldn't open the door of the truck fast enough for them to get the

stuff out of the house."  *Id.* at 11.

Mr. Mitan rejoins that Inspector Clark's testimony regarding the Deckard

Partnership's having voluntarily consented to the seizure is inadmissible hearsay and that

there is contrary evidence in the record establishing that Inspector Clark coerced the

Partnership's consent, either by falsely implying he had a search warrant or by

"improperly utiliz[ing] a grand jury subpoena in lieu of a search warrant."  Dkt. 68 at 10.

For the following reasons, we are not persuaded by these arguments.

We can dispatch quickly with Mr. Mitan's hearsay argument.  Hearsay is an out of

court statement offered to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  A

statement is "a person's oral assertion, written assertion, or nonverbal conduct, if the

person intended it as an assertion."  Fed. R. Evid. 801(a).  However, when an out-of-court

statement's significance "lies solely in the fact that it was made, no issue is raised as to

16

the truth of anything asserted, and the statement is not hearsay …. The effect is to

exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in

which the statement itself affects the legal rights of the parties or is a circumstance

bearing on conduct affecting their rights."  Fed. R. Evid. 801(c), Advisory Committee's

Note to Subdivision (c).

The Seventh Circuit has found that the "utterance of consent to [] search"

constitutes a "verbal act[], and as such [is] not inadmissible hearsay" because "[l]ike the

classic examples of verbal acts, offer and acceptance, … statements that grant or

withhold permission to the authorities to conduct a search carry legal significance

independent of the assertive content of the words used."  *United States v. Moreno*, 233

F.3d 937, 940 (7th Cir. 2000) (internal citation omitted).  Accordingly, Inspector Clark's

testimony that the Partnership gave consent to seize the materials at issue in this litigation

is admissible because the expression of consent is not hearsay, but a verbal act.

Nor is Mr. Mitan's claim that Inspector Clark coerced the Deckard Partnership into

giving consent, either by falsely implying that he had a search warrant or by improperly

using a grand jury subpoena, supported by the evidence.  The only evidence Mr. Mitan

cites in support of the claim that Inspector Clark implied to the Deckard Partnership

employees that he had a search warrant covering the seized property is a section of a brief

in support of a motion to dismiss filed earlier in this litigation by the attorney

representing Ms. Raper and Richard Deckard, both of whom were previously named as

defendants in this case, in which the attorney assumed that because Inspector Clark used

a Search Warrant Inventory form to memorialize the materials that were seized, there must also have been a search warrant "to which the Search Warrant Inventory would have been attached."  Dkt. 20 at 5.  However, argument and statements from an attorney, unsupported by affidavits or deposition testimony, "are not evidence," even on summary judgment.  *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *see also In re Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight."); *Thames v. St. Vincent Stress Ctr.*, No. 1:09-cv-1041-SEB-TAB, 2010 WL 5124733, at *7 (S.D. Ind. Dec. 9, 2010) (observing that statement by opposing party's attorney in briefing "is not evidence" for purposes of summary judgment).  Beyond the attorney's inadmissible assumption that there had to have been a search warrant, there is no evidence to substantiate Mr. Mitan's claim that Inspector Clark falsely represented to Ms. Raper or any other employee of the Deckard Partnership that he was executing a search warrant.  Indeed, Inspector Clark has testified specifically to the contrary.

Thus, to recap, the only admissible evidence in the record regarding this issue is Inspector Clark's uncontroverted testimony that he never represented or implied that he was executing a search warrant and that he used the search warrant inventory form only because the form was printed on carbon paper which enabled him to provide Ms. Raper with a copy of the list of items seized.  Inspector Clark further testified that he took steps to affirmatively demonstrate he was not executing a search warrant, including crossing out the words "search warrant" in the title of the inventory form.  Accordingly, there is no

admissible evidence to support Mr. Mitan's claim that Inspector Clark implied, much less falsely represented, to any employee of the Deckard Partnership that he was executing a search warrant; rather, the undisputed evidence establishes the contrary.

Mr. Mitan's alternative argument that Inspector Clark improperly used a grand jury subpoena to coerce the Deckard Partnership's employees into consenting to the seizure is likewise unfounded.  The only evidence Mr. Mitan cites in support of this claim is that Inspector Clark testified at one point during his deposition that he understood that the Deckard Partnership was complying with the December 18, 2008 grand jury subpoena issued against Mr. Mitan's brother when it agreed to turn over documents to the government.  Clark Dep. at 39.  Inspector Clark clarified upon further questioning, however, that he understood that a grand jury subpoena had at one point been issued, but that he had "no reason one way or the other" to know whether the seized items were being turned over pursuant to that subpoena because the Partnership had dealt exclusively with the U.S. Attorney's Office regarding the subpoena.  *Id.* at 47.  Inspector Clark testified that he had no memory of speaking with Ms. Raper about whether she was turning over the documents pursuant to a subpoena and that he knew only that the Deckard Partnership had contacted the United States Attorney's Office to say that the government should come to retrieve whatever documents it wanted from 3230 Reba Court because, to the Partnership, the documents were "garbage," and it otherwise planned to dispose of the materials.  *Id.* at 46.  When considered as a whole, this

testimony in no way supports Mr. Mitan's claim that Inspector Clark "improperly utilized" the grand jury subpoena in seizing the materials from the Property.

For these reasons and on these grounds, we hold that Inspector Clark is entitled to summary judgment based on qualified immunity in defense of Mr. Mitan's claim that the October 1, 2019 seizure of the personal property at issue violated his Fourth Amendment rights. To the extent that Mr. Mitan contends that the government's continued withholding of the materials after the Monroe Circuit Court's order was overturned as to the Deckard Partnership's ownership interest in the personal property housed at 3230 Reba Court constitutes a separate violation of his Fourth Amendment rights, that claim also does not survive summary judgment. It is well-established in the Seventh Circuit that "continued retention of unlawfully seized property is not a separate Fourth Amendment wrong." *Gonazlez v. Vill. of W. Milwaukee*, 671 F.3d 649, 660 (7th Cir. 2012) (citing *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003)). Moreover, Mr. Mitan has presented no case law or other authority to contradict the Third Circuit's conclusion based on its prior consideration of this issue that "it was not clearly established that the Fourth Amendment prohibited the continued retention of the property after the state appeals court partially reversed the [Marion Circuit Court's] judgment." *Mitan*, 656 Fed. App'x at 614. Inspector Clark is therefore entitled to summary judgment

on any Fourth Amendment claim related to the government's continued retention of the seized materials following the partial reversal of the Marion Circuit Court's order.[5]

## III.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. 62] is GRANTED, and Plaintiff's Cross Motion for Summary Judgment [Dkt. 67] is DENIED. Final judgment shall be entered accordingly.

IT IS SO ORDERED.


Date: _____9/16/2021_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

_____

[5] We note also that there is no evidence that Inspector Clark was personally involved in the decision to hold the materials from 3230 Reba Court for use in the criminal proceedings against Kenneth Mitan until 2015, when those proceedings conclusively ended upon his death, which buttresses our conclusion that there is no basis to impose personal liability on Inspector Clark based on the government's decision.

Distribution:

KEITH J. MITAN
PO Box 251597
West Bloomfield, MI 48325-1597

Holly M. Harvey
BUNGER & ROBERTSON
hmharvey@lawbr.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
tom.kieper@usdoj.gov

Jackson Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
taylor.kirklin@usdoj.gov

John W. Richards
BUNGER & ROBERTSON
jwr@lawbr.com